IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BOB A. BRINSON (A-82598),<br><br>      Plaintiff,<br><br>      v.<br><br>JACQUELINE LASHBROOK, JOHN TROST, RANDY PFISTER, SALEH OBAISI, and WEXFORD HEALTH SOURCES, INC., a Florida corporation,<br><br>      Defendants. | Case No. 17-cv-01659<br><br>Hon. John Z. Lee |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT RANDY PFISTER'S
MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

Because plaintiff Bob A. Brinson alleges that he filed a grievance and unsuccessfully appealed the denial of that grievance, the complaint in this matter states a claim against defendant Randy Pfister for violation of Mr. Brinson's constitutional rights. Moreover, Pfister has failed to set forth any factual or legal basis to support his request to strike Mr. Brinson's request for injunctive relief. As such, the Court should deny Defendant Randy Pfister's Motion to Dismiss Plaintiff's Complaint (Doc. No. 35, the "Motion").

**BACKGROUND**

**I.    Mr. Brinson Receives Constitutionally Deficient Care for his Chronic Illness**

Mr. Brinson was incarcerated at Stateville Correctional Center ("Stateville") in 2009. (Compl. ¶ 1.) When he arrived at Stateville, he notified the prison's medical director that he had been diagnosed with Polycystic Kidney Disease ("PKD"), a chronic, degenerative illness that ultimately leads to kidney failure. (*Id.* at ¶¶ 1, 22-29.)

In November 2011, Mr. Brinson brought a civil rights lawsuit arising from Stateville's and its medical personnel's failure to adequately accommodate his PKD-related medical needs. (*Id.* at ¶ 30.) The medical personnel working at Stateville are employees of Wexford Health Services, Inc. ("Wexford"), a corporation that provides health care professionals to the Illinois Department of Corrections ("IDOC") under a contract between Wexford and the IDOC. (Compl. ¶¶ 19-20.) In May 2014, Mr. Brinson entered into a settlement agreement with the defendants in his 2011 case and Wexford (who was not a defendant in that case). (*Id.* at ¶ 31.) Among other things, that settlement agreement obligated Wexford and its employees to take Mr. Brinson to specialists outside the prison for treatment of his PKD, and to follow those specialists' recommendations for Mr. Brinson's continuing care, with limited exceptions related to safety and security concerns. (*Id.* at ¶¶ 32-34.)

Beginning in August 2014 and continuing through the beginning of 2017, Mr. Brinson missed numerous scheduled appointments with his outside specialists for reasons unknown to Mr. Brinson. (*Id.* at ¶¶ 43-49.) Most recently, in July 2016, Mr. Brinson was examined by a specialist at the University of Illinois Medical Center of Chicago ("UIC") who noted that Mr. Brinson's PKD had progressed to end stage kidney disease. (*Id.* at ¶ 48.) The specialist recommended that Mr. Brinson return to the UIC clinic in four to six weeks, as he would soon need to begin dialysis. (*Id.* at ¶ 48.)

Stateville's and Wexford's personnel failed to facilitate Mr. Brinson's return to UIC for his follow-up appointment during the summer of 2016, or at any other time. (*Id.* at ¶¶ 49-50.) While Mr. Brinson languished waiting to return to UIC, he was transferred against his wishes to Menard Correctional Center ("Menard") in southern Illinois. (*Id.* at ¶ 52.) More than a month after his transfer, Mr. Brinson was taken to see an outside specialist in Carbondale, Illinois who

assessed the severity of Mr. Brinson's condition and scheduled emergency surgery to begin dialysis. (*Id.* at ¶¶ 56-57.)

## II. Mr. Brinson Sues Warden Pfister and Others

Mr. Brinson filed the complaint in this case in March 2017. (*See* Doc. No. 1, the "Complaint"). Among other claims, the Complaint alleges two causes of action under 42 U.S.C. § 1983 against Pfister, Stateville's warden, for violating Mr. Brinson's constitutional rights by his deliberate indifference to Mr. Brinson's medical needs (Count I), and by subjecting Mr. Brinson to cruel and unusual punishment (Count II). (*Id.* at ¶¶ 62-82.)

Specifically, the Complaint alleges that "IDOC personnel under the supervision of Warden Pfister failed to facilitate Mr. Brinson's transfer from Stateville to UIC on the date of Mr. Brinson's [missed] appointments." (*Id.* at ¶ 45.) Mr. Brinson pleads that he filed a grievance in March 2016 "regarding his missed appointments," "[t]hat grievance has been denied, and Mr. Brinson's appeal was unsuccessful." (*Id.* at ¶ 47.)

The complaint further alleges that "Dr. Obaisi and Warden Pfister were aware that Mr. Brinson's PKD was in an advanced stage during 2015 and 2016 and could become life-threatening if not properly treated." (*Id.* at ¶ 51.) Nevertheless, "Dr. Obaisi and IDOC failed to bring Mr. Brinson back to UIC at any point . . . through the time he was transferred to Menard." (*Id.* at ¶ 50.) Mr. Brinson repeats the allegation throughout the complaint that "Warden Pfister knew there was a substantial risk to Mr. Brinson's health by failing to provide him with treatment for his PKD, but disregarded that risk." (*Id.* at ¶ 66; *see also id.* at ¶ 78 (alleging Pfister "knew there was a substantial risk to Mr. Brinson's health resulting from the inadequate treatment of his PKD" but "disregarded that risk").)

3

### III.   The Motion

Defendant Pfister now moves to dismiss Mr. Brinson's claims against him on two bases. First, Pfister argues the complaint fails to "allege any facts to show that Warden Pfister had any personal involvement in the allegations," including facts showing Pfister knew Mr. Brinson was seriously ill, the risk to Mr. Brinson from failing to receive treatment for his illness, or the fact that Mr. Brinson missed appointments. (Mem. 4.)  Second, Pfister argues Mr. Brinson cannot state a civil rights claim against him based on his "position as the top official at Stateville" because "a *respondeat superior* theory of liability does not state a claim under § 1983." (*Id.* at 5.)  In addition, Pfister advances the undeveloped claim that Mr. Brinson's request for injunctive relief against the warden is superseded by a request for relief in a different case pending before this court. (*Id.*)  Pfister's arguments lack merit.

## ARGUMENT

### I.   Legal Standard

"To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint must 'state a claim to relief that is plausible on its face.'  A claim satisfies this standard when its factual allegations 'raise a right to relief above the speculative level.'  For purposes of a motion to dismiss, the court takes all facts alleged by the plaintiff as true and draws all reasonable inferences from those facts in the plaintiff's favor . . . ." *Riley-El v. Godinez,* No. 13 C 8656, 2015 WL 4572322, at *3 (N.D. Ill. July 27, 2015) (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) and *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555–56 (2007)). "Motions to dismiss test the sufficiency, not the merits of a case." *Wiek v. Keane*, No. 09 CV 920, 2010 WL 1976870, at *2 (N.D. Ill. May 12, 2010) (citation omitted).  The Seventh Circuit has explained that it is "not necessary" for a plaintiff to include "[s]pecific facts," and "a plaintiff need not plead legal

theories." *Wiek*, 2010 WL 1976870, at *2 (citations omitted). Mr. Brinson's Complaint satisfies the legal standard.

## II. The Complaint States A Claim Against Defendant Pfister

### A. Mr. Brinson has pleaded sufficient facts to state a claim against Pfister.

Contrary to Pfister's claim in his memorandum, Mr. Brinson need not plead Pfister was "personally involved" (Mem. 4) in failing to take him to his medical appointments to state a claim under § 1983. In fact, supervisors like Warden Pfister "need not participate directly in the deprivation [of civil rights] for liability to follow under § 1983." *Ohlrich v. Vill. Of Wonder Lake*, 22 F. Supp. 3d 874, 877 (N.D. Ill. 2014) (quoting *Backes v. Village of Peoria Heights, Ill.*, 662 F.3d 866, 869–70 (7th Cir. 2011)) (internal quotation marks omitted). The Seventh Circuit has explained: "so long as the supervisors know about the conduct and facilitate it, condone it, or turn a blind eye for fear of what they might see, they can be held liable." *Ohlrich*, 22 F. Supp. 3d at 877 (citation and internal quotation marks omitted). Thus, "non-medical officials" like Warden Pfister "can be chargeable with deliberate indifference where they have reason to believe (or actual knowledge) that prison doctors are mistreating (or not treating) a prisoner." *Riley-El*, 2015 WL 4572322, at *6 (quoting *Arnett v. Webster,* 658 F.3d 742, 755 (7th Cir. 2011)) (internal quotation marks omitted). As such, Warden Pfister's protestation about Mr. Brinson's failure to plead personal involvement and the unavailability of *respondeat superior* liability are of no moment.

Mr. Brinson has satisfied the standard for pleading deliberate indifference against Warden Pfister because the Complaint alleges Mr. Brinson grieved about the seriousness of his PKD and his missed medical appointments to no avail. (*See* Compl. ¶ 47.) The fact that Mr. Brinson filed at least one grievance detailing his PKD diagnosis and the repeated failure of

5

prison and medical personnel at Stateville to take Mr. Brinson to his appointments at UIC gives rise to the inference that Warden Pfister possessed the knowledge required to be liable for deliberate indifference. *Riley-El*, 2015 WL 4572322; *Perez v. Fenogio*, 792 F.3d 768 (7th Cir. 2015); *Romero v. Atchison*, No. 15-cv-713, 2015 WL 7710372, at *3 (N.D. Ill. Nov. 30, 2015).

In *Perez*, for example, the Seventh Circuit reversed the district court's order dismissing an inmate's complaint against the warden of the prison where he was incarcerated. 792 F.3d 768. In that case, the plaintiff alleged that he filed two grievances complaining that prison and medical personnel had failed to provide him with prompt medical care to treat an injury he sustained playing basketball at the prison. The plaintiff further alleged that, because he received no response to his grievances, he submitted a "resident request" to the warden and sent a letter to the Administrative Review Board in Springfield asking for assistance in obtaining a resolution to the grievances. *Id.* at 776. He also received no replies to those communications.

In reversing the lower court's dismissal of the plaintiff's complaint against the warden, the *Perez* court reasoned: "An inmate's correspondence to a prison administrator may . . . establish a basis for personal liability under § 1983 where that correspondence provides sufficient knowledge of a constitutional deprivation. Indeed, once an official is alerted to an excessive risk to inmate safety or health through a prisoner's correspondence, refusal or declination to exercise the authority of his or her office may reflect deliberate indifference." *Perez*, 792 F.3d at 781-82 (7th Cir. 2015) (citations and internal quotation marks omitted); *see also Romero*, 2015 WL 7710372, at *3 (holding that prisoner sufficiently pleaded defendants' personal participation in his constitutional deprivations because complaint alleged defendants "received Romero's grievance" describing harms at issue).

6

Likewise, in *Riley-El*, this court found the plaintiff—an IDOC inmate suffering from PKD who complained of the harmful effects of the prison's high-soy diet—stated a claim for deliberate indifference against wardens of the facility where he was incarcerated based on allegations related to the plaintiff's grievances. 2015 WL 4572322, at *6. The *Riley-El* court explained:

> [Plaintiff Riley-El] alleges that [the warden] defendants were responsible for resolving inmate grievances and that they rejected his grievances requesting [a] soy-free diet and medical treatment. According to Riley–El, each of these defendants knew that he had complained that his soy-containing diet was causing him injury, knew that the diet was potentially harmful to him given his soy allergy and medical condition, and had the authority to provide him with an alternative diet but failed to do so. Riley–El also generally alleges that he has not received adequate and necessary treatment for his serious medical needs. In response, [the warden defendants] argue that Riley–El's claims against them are premised on their status as high-ranking IDOC officials, rather than personal responsibility for an alleged violation of his rights.
>
> Although not every person who receives a complaint of an alleged constitutional violation is liable under § 1983 . . . [the warden defendants] are not merely public officials. Given their positions as warden and their alleged responsibility to oversee the grievance resolution process, it is reasonable to infer that they could be aware of Riley–El's grievances and could have investigated his complaints or intervened.
> . . .
>
> Accordingly, Riley–El has adequately alleged that [the wardens] were aware, through his grievances, that he claimed that he was receiving a medically inappropriate diet and inadequate treatment for serious medical needs, including PKD and elevated blood pressure, but failed to respond reasonably. The motion to dismiss based on these defendants' alleged lack of personal involvement is denied.

*Id.*

As in *Perez* and *Riley-El*, here, the plaintiff alleges that Warden Pfister gained knowledge of his serious medical condition and constitutional deprivations through the grievance process. Those allegations are sufficient to plead a claim for deliberate indifference. As Warden Pfister is no doubt aware, the chief administrative officer's signature is required on the IDOC grievance

7

response form, and is a prerequisite to the appeal of a grievance response to the IDOC director in Springfield. As Mr. Brinson alleges his grievance was denied and his appeal was "unsuccessful" (Compl. at ¶ 47), the Court may infer that Warden Pfister reviewed Mr. Brinson's grievance and concurred with the grievance officer's report and recommendation. Consistent with Seventh Circuit precedent, here, Warden Pfister's failure to act in response to Mr. Brinson's complaint of repeated constitutional violations by IDOC and Wexford personnel working at Stateville states a plausible claim of deliberate indifference. *Iqbal,* 556 U.S. 662, 678 ("A claim has factual plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

### B. There is no basis for striking Mr. Brinson's request for injunctive relief.

Pfister's memorandum concludes with the two-sentence assertion that Mr. Brinson's claim for injunctive relief is not viable because Mr. Brinson is a member of a class of plaintiffs in another lawsuit pending in this court, *Lippert v. Baldwin*, No. 10-cv-4603, "which supersedes and resolves Plaintiff's claim for injunctive relief here." (Mem. 5.) Pfister cites no law to support his conclusory statement, nor does he explain the allegations or requests for relief at issue in *Lippert* or their relationship to Mr. Brinson's case.

In fact, *Lippert* is a class action that seeks injunctive relief to fix the IDOC's healthcare system as a whole, noting that pervasive "Failure to treat, and unreasonable delay in treating, prisoners with serious health conditions inflicts unnecessary pain and suffering." (*Lippert* Fourth Am. Compl. 1.) *Lippert* is about systemic issues that impact medical care statewide; it does not provide an appropriate forum for individual prisoners to seek specific medical care. This Court should reject Pfister's specious claim that *Lippert* prevents Mr. Brinson from obtaining an

injunction requiring Pfister to facilitate the provision of medical care to which Mr. Brinson is constitutionally entitled.

## **CONCLUSION**

For the foregoing reasons, Mr. Brinson respectfully requests the Court deny the Motion. If, however, the Court grants the Motion, Mr. Brinson requests leave to re-plead the allegations in his Complaint against defendant Pfister.

Dated: June 19, 2017          Respectfully submitted,

BOB A. BRINSON

By: */s/ Alison R. Leff*
    One of His Attorneys

Steven J. Yatvin
BARACK FERRAZZANO
KIRSCHBAUM & NAGELBERG LLP
200 W. Madison St., Ste. 3900
Chicago, IL 60606
(312) 984-3100
(312) 984-3150 (Fax)
steve.yatvin@bfkn.com

-and-

Alison R. Leff
SIDLEY AUSTIN LLP
1 S. Dearborn
Chicago, IL 60603
(312) 853-7000
(312) 853-7036 (Fax)
aleff@sidley.com

*Attorneys for Plaintiff*

## **CERTIFICATE OF SERVICE**

      I hereby certify that on June 19, 2017, I electronically filed the foregoing document, which will send a Notice of Electronic Filing to all counsel of record.

                                                                           */s/ Alison R. Leff*