# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| BOB BRINSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 17 C 1659 |
| | ) | |
| JACQUELINE LASHBROOK, | ) | Judge John Z. Lee |
| JOHN TROST, RANDY PFISTER, | ) | |
| SALEH OBAISI, and WEXFORD HEALTH | ) | |
| SOURCES, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Bob Brinson has sued Defendants Wexford Health Sources, Inc. ("Wexford"), Randy Pfister, Warden of Stateville Correctional Center ("Stateville"), Dr. Saleh Obaisi,[1] Wexford's medical director at Stateville, Jacqueline Lashbrook, Warden of Menard Correctional Center ("Menard"), and Dr. John Trost, Wexford's medical director at Menard, pursuant to 42 U.S.C. § 1983. Brinson alleges that Defendants were deliberately indifferent to his end-stage renal disease in violation of his Eighth Amendment rights (Counts I and II) and that Wexford has breached a settlement agreement with Brinson resulting from a previously filed case (Count III).

Defendants Lashbrook and Trost have individually moved to sever the claims against them and to transfer venue to the Central District of Illinois pursuant to Federal Rule of Civil Procedure ("Rule") 21 and 28 U.S.C. § 1404(a). Defendant Pfister has moved to dismiss Brinson's claims under Rule 12(b)(6). For the following reasons, Defendants' motions are denied.

---

[1] On January 22, 2018, a suggestion of death as to Dr. Saleh Obaisi was filed by his counsel. ECF No. 60. To date, the executor of Dr. Obaisi's estate has not been identified. *Id.*

**DISCUSSION**

During all times relevant to this litigation, Brinson has been an inmate in the custody of the Illinois Department of Corrections ("IDOC"). Compl. ¶ 14, ECF No. 1. When he was admitted into Stateville in 2009, he notified Dr. Parthasarathi Ghosh, Wexford's then-medical director, that he had previously been diagnosed with Polycystic Kidney Disease ("PKD"). Brinson's end-stage kidney disease has caused him headaches and consistent, severe pain in his kidneys and back. *Id.* ¶¶ 25, 35.

Pursuant to 42 U.S.C. § 1983, Brinson sued Wexford,[2] individual Wexford employees, and Stateville employees for deliberate indifference to his medical needs in 2011 ("2011 Lawsuit"). *Id.* ¶ 2. Brinson and the defendants settled the case in mid-2014. *Id.* ¶ 3. The settlement agreement required Wexford to monitor and care for Brinson's PKD, bring Brinson to a PKD specialist for treatment, follow the specialist's plan of treatment, and provide a renal diet for Brinson. *Id.* ¶ 4.

The complaint alleges that Stateville's Warden Pfister and Medical Director Obaisi failed to provide Brinson with treatment for his PKD. *Id.* ¶ 5. For example, Pfister and Dr. Obaisi ignored the recommendation of the PKD specialist at University of Illinois Hospital and Health Sciences System ("UIC") that Brinson receive treatment on the following dates: August 1, 2014; September 18, 2015; October 16, 2015; February 19, 2016; and September 2016. *Id.* ¶ 43. Brinson filed a grievance in March 2016, regarding the missed appointments, and his grievance was denied, both originally and on appeal. *Id.* ¶ 47.

---

[2] Wexford is a private contractor to the IDOC and coordinates medical services to Illinois prisoners. *Id.* ¶ 20.

During this time, Dr. Obaisi and Warden Pfister were aware that, if left untreated, end-stage PKD was life-threatening. *Id.* ¶ 51. Dr. Obaisi and Warden Pfister, nonetheless, disregarded that risk and failed to provide Brinson access to treatment. *Id.* ¶¶ 50, 66, 78. All in all, after he had settled the 2011 case, Brinson went more than five months without medical treatment for his PKD condition while at Stateville. *Id.* ¶ 50.

With Dr. Obaisi's approval, IDOC then transferred Brinson from Stateville to Menard on November 21, 2016. *Id.* ¶¶ 6, 52–53. After Brinson was transferred, Lashbrook, who is Menard's Warden, and Dr. Trost, who is Wexford's medical director at Menard, also failed to provide any treatment to Brinson for his PKD. *Id.* ¶ 7. In addition, Dr. Trost did not approve or provide a renal diet for Brinson. *Id.* ¶ 55. As a result of Lashbrook and Trost's deprivation of a renal diet for Brinson at Menard, as well as their denial of treatment for Brinson's end-stage PKD at Menard, his PKD progressed to the point where emergency surgery was required and a catheter was inserted into Brinson's neck to perform emergency dialysis on January 3, 2017. *Id.* ¶¶ 56–57. Brinson continues to suffer from severe pain as a result of the emergency surgery. *Id.* ¶ 58.

Brinson was transferred back to Stateville on January 29 2017. *Id.* ¶ 59. He has been receiving dialysis regularly at Stateville ever since. *Id.* ¶ 60.

## I. Defendants Lashbrook's and Trost's Motions to Sever

Defendants Lashbrook and Trost move to sever Brinson's claims against them. Mem. Supp. Mot. Sever & Transfer at 3–4, ECF No. 48. A district court has "broad discretion" under Rule 21 to sever any claim so long as the claim is "discrete and separate." *Rice v. Sunrise Express, Inc.*, 209 F.3d 1008, 1016 (7th Cir. 2000). "[D]iscrete and separate" means that "one claim must be capable of resolution despite the outcome of the other claim." *Gaffney v.*

3

*Riverboat Servs. of Ind., Inc.*, 451 F.3d 424, 442 (7th Cir. 2006). In exercising its broad discretion, a court may consider severance if it is "in the interest of judicial economy and to avoid prejudice." *Vermillion v. Levenhagen*, 604 F. App'x 508, 513 (7th Cir. 2015).

Two recent cases issued by district judges in this Circuit provide useful guidance to the issue presented here. In *Young v. Obaisi*, the plaintiff alleged that the wardens, medical directors, and Wexford employees at two different prisons, as well as an outside orthopedic specialist, were deliberately indifferent to his knee injury. No. 15-cv-2412, 2015 WL 8013437, at *2 (N.D. Ill. Dec. 7, 2015). One of the wardens and Wexford moved to sever and transfer the claims against them. *Id.* at *1. The *Young* court denied the motion because the same outside orthopedist served both prisons. The Court emphasized that "[t]he key witness in the case–the outside orthopedist–works here in Chicago; the doctor would have to testify twice (and at great inconvenience in the Central District) if the claims were severed." *Id.* at *5.

In *Malik v. Rankin*, the plaintiff alleged that medical service providers and prison administrators at four different prisons were deliberately indifferent to his gastrointestinal and ankle conditions. No. 15-cv-84, 2015 WL 1004019, at *3 (S.D. Ill. Mar. 4, 2015). The court granted the defendants' motion to sever because the claims were "capable of resolution independently" in that the plaintiff's treatment "involve[d] personnel at four different prisons." *Id.* at *6. The *Malik* court held that severance would not prejudice the plaintiff because, besides his ailments, nothing linked his claims against one prison and its medical staff to his claims against other prisons and its medical staff. *Id.*

The circumstances of this case resemble *Young* more than *Malik*. Here, Brinson's deliberate indifference claim against Pfister, Obaisi, and Wexford, as well as his breach of contract claim against Wexford, necessarily depend on the testimony of Defendants Lashbrook

and Trost. For example, their testimony is necessary to determine whether Pfister, Obaisi, or Wexford notified Lashbrook and Trost that Brinson was required to be treated by a PKD specialist and required to be provided a renal diet.

Likewise, Brinson's deliberate indifference claim against Lashbrook and Trost hinges on the testimony of Pfister and Obaisi. For example, if Pfister and Obaisi never told Lashbrook and Trost about Brinson's serious medical condition or Wexford's obligations under the settlement agreement, and Lashbrook and Trost were not otherwise aware of his end-stage PKD or treatment requirements, this would undercut any claim that they were deliberately indifferent to Brinson's condition. In short, if the Court were to grant the motion to sever this case, key witnesses in both cases would have to testify at both trials.

For these reasons, the Court concludes that the claims against Lashbrook and Trost are not discrete and separate from the claims against Pfister and Obaisi because they are not capable of resolution independently of one another. *See Rice*, 209 F.3d at 1016. The motions to sever claims against Lashbrook and Trost are therefore denied.

## II. Defendants Lashbrook's and Trost's Motions to Transfer

Lashbrook and Trost also request that the claims against them be transferred to the Central District of Illinois. A district court may transfer a civil action "[f]or the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a). Transfer is allowed if "(1) venue is proper in both the transferor and transferee court; (2) transfer is for the convenience of the parties and witnesses; and (3) transfer is in the interests of justice." *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219–20 (7th Cir. 1986). A court may use its discretion in considering the convenience and fairness of transfer to each party. *Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 977 (7th Cir. 2010).

5

As an initial matter, the parties presume that if the claims against Lashbrook and Trost are not severed, venue is proper in both the Northern District and Central Districts.[3] Accordingly, the Court focuses on the convenience and the interest of justice factors.

With regard to convenience, courts consider five factors relating to the private interests of the parties and witnesses: "(1) the plaintiff's choice of forum; (2) the situs of material events; (3) the relative ease of access to sources of proof; (4) the convenience of the witnesses; and (5) the convenience to the parties of litigating in the respective forums." *Body Sci. LLC v. Boston Sci. Corp.*, 846 F. Supp. 2d 980, 992 (N.D. Ill. 2012) (citing Research Automaton, 626 F.3d at 978). As to the first factor, there is a strong presumption in favor of the plaintiff's choice of forum if that forum is where the plaintiff resides. *In re Nat'l Presto Indus., Inc.*, 347 F.3d 662, 664 (7th Cir. 2003) (internal quotation marks omitted) ("[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed."). The party seeking to transfer venue bears "the burden of showing that 'the transferee forum is clearly more convenient.'" *Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1293 (7th Cir. 1989) (quoting *Coffey*, 796 F.2d at 1293). "Where the balance of convenience is a close call, merely shifting inconvenience from one party to another is not a sufficient basis for transfer." *Research Automation*, 626 F.3d at 979.

In balancing the convenience factors, the Court finds that Lashbrook and Trost fall short of demonstrating that litigating the case in the Southern District of Illinois would be clearly more convenient for all of the parties and witnesses. First, Brinson's choice of forum is entitled to substantial deference because he resides in the Northern District of Illinois, and, as discussed

---

[3] Trost argues that if the Court were to grant his motion to sever, this district would be an improper venue under 28 U.S.C. § 1391 because he resides in the Southern District of Illinois. Because the Court denies the motion to sever and because other defendants reside in this district, however, venue in this district is appropriate. *See* 28 U.S.C. § 1391 ("A civil action may be brought in . . . a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located.").

above, his claims against Pfister, Obaisi, and Wexford in this forum have a substantial connection to his claims against Lashbrook and Trost. Second, because of the obligations created by the settlement agreement in the 2011 case, Lashbrook and Trost's liability may depend on material events that occurred in this district. Third, Brinson's medical records at Menard may be easily accessed in either forum. Lastly, transferring the case will serve only to shift inconvenience from the Menard defendants and nonparty witnesses residing in the Southern District of Illinois to the Stateville defendants and nonparty witnesses residing in the Northern District of Illinois.

Additionally, the public interest does not favor transfer. While the median time to proceed to trial is four months faster in the Southern District than in the Northern District, see *Federal Court Management Statistics*, United States Courts (March 2017), http://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile0331.2017.pdf, both courts are familiar with the relevant law, and it would be more efficient to resolve the controversy in the district connected to all three of the interrelated counts in the complaint.

Having considered the relevant factors, the Court therefore concludes that, when considered in totality, neither the convenience factors nor the interest of justice factors weigh decisively in favor of transferring venue of Brinson's claim against Lashbrook and Trost to the Southern District of Illinois. Accordingly, the Court denies Lashbrook's and Trost's motions to transfer the case.

III. **Defendant Pfister's Motion to Dismiss**

Finally, Pfister has moved to dismiss Brinson's complaint for failure to state a claim. To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim

7

has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). Further, "allegations in the form of legal conclusions are insufficient to survive a Rule 12(b)(6) motion." *McReynolds v. Merrill Lynch & Co., Inc.*, 694 F.3d 873, 885 (7th Cir. 2012) (citing *Iqbal*, 556 U.S. at 678). The complaint must also contain a "statement of the claim showing that the pleader is entitled to relief, sufficient to provide the defendant with fair notice of the claim and its basis." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008) (internal quotation marks omitted).

Pfister argues that Brinson fails to state a claim against him for deliberate indifference, because he does not allege any facts to show that Pfister was personally involved in the challenged actions. *See Estate of Perry v. Wenzel*, 872 F.3d 439, 459 (7th Cir. 2017) ("Individual liability pursuant to § 1983 requires personal involvement in the alleged constitutional deprivation.") (internal quotation marks omitted). But, accepting all factual allegations in the complaint as true and construing all reasonable inferences in Brinson's favor, the Court concludes that he has stated a plausible claim against Pfister.

First, Brinson alleges that Pfister was aware that Brinson's PKD was in an advanced stage during 2015 and 2016 and that his condition was life-threatening if not properly treated at UIC. Compl. ¶ 51. It is also reasonable to infer that a warden would be aware of the facts of a settlement agreement that created obligations on the part of the prison and its personnel. Brinson further alleges that prison officials are involved in approving visits to UIC and that Pfister failed to approve Brinson's PKD treatment at UIC prior to his transfer to Menard. *Id.* ¶ 50. What is more, Brinson asserts that Pfister knew that failing to provide Brinson with proper treatment for his PKD would result in a substantial risk to Brinson's health but disregarded that risk. *Id.* ¶¶ 66,

78. Taken as true, these facts sufficiently allege that Pfister himself acted with deliberate indifference to Brinson's serious medical needs. Accordingly, the Court denies Defendant Pfister's motion to dismiss the complaint.

## Conclusion

For the reasons provided in this Order, Defendant Lashbrook's and Defendant Trost's motions to sever and transfer are denied [32][37]. In addition, Defendant Pfister's motion to dismiss is denied [35-1].

**SO ORDERED**             **ENTERED  3/12/18**

*/s/ John Z. Lee*

**John Z. Lee**
**United States District Judge**