THE UNITED STATES DISTRICT COURT
FOR THE NORTHER DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| BRINSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 17 CV 1659 |
| | ) | |
| LASHBROOK, *et al.*, | ) | Honorable John Z. Lee |
| | ) | Judge Presiding |
| Defendants. | ) | |

**DEFENDANTS' REPLY IN SUPPORT OF
THEIR MOTION FOR SUMMARY JUDGMENT**

Defendants Jeff Hutchinson and Randy Pfister ("Defendants"), by and through their attorney, Kwame Raoul, Attorney General of Illinois, submit the following reply in support of their Motion for Summary Judgment:

**ARGUMENT**

**I. Defendants are entitled to summary judgment because they were not deliberately indifferent to Plaintiff's serious medical need.**

To recover under 42 U.S.C. § 1983, "a plaintiff must establish that a defendant was personally responsible for the deprivation of a constitutional right." *Knight v. Wiseman*, 590 F.3d 458, 462 (7th Cir. 2009) (*quoting Johnson v. Snyder*, 444 F.3d 579, 583 (7th Cir. 2006)). A plaintiff's allegations against a prison official can only satisfy "the personal responsibility requirement of section 1983 if the conduct causing the constitutional deprivation occurs at [the official's] direction or with his knowledge and consent." *Arnett v. Webster*, 658 F.3d 742, 757 (7th Cir. 2011). "That is, [the official] must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye." *Id.*

1

"In short, some causal connection or affirmative link between the action complained about and the official sued is necessary for § 1983 recovery." *Id*. Furthermore, an official who had actual knowledge of an excessive risk to the health or safety of an individual is "free from liability if [he] responded reasonably to the risk, even if the harm ultimately was not averted, because in that case it cannot be said that [he was] deliberately indifferent." *Peate v. McCann*, 294 F.3d 879, 882 (7th Cir. 2002) (citing *Farmer v. Brennan*, 511 U.S. 825, 844-45 (1994)).

Plaintiff's Response fails to establish an issue of material fact as to whether Defendants Hutchinson and Pfister acted with deliberate indifference because he has not shown that they were personally responsible for the alleged constitutional violation. It is Plaintiff's burden to establish that each Defendant was aware of, and disregarded a risk to his health. *See Roe v. Elyea* 631 F.3d 843, 857 (7th Cir. 2011). To meet this burden, Plaintiff "must present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Henning v. O'Leary*, 477 F.3d 492, 496 (7th Cir. 2007) (internal citations omitted). However, Plaintiff has not pointed to any competent and admissible evidence that would establish Defendants intentionally or recklessly denied or delayed Plaintiff's medical treatment.

The undisputed evidence shows that the former wardens are not medical professionals, and were not directly involved in Plaintiff's medical care or treatment decisions. (*See* DSOF at ¶¶ 15-20). There is no evidence that they ignored Plaintiff's complaints or that their deferment to Plaintiff's treating physicians was unjustified. Moreover, as non-medical administrators, Defendants are not required to intervene and

substitute their judgment for that of Plaintiff's treating physicians. *See Arnett*, 658 F.3d 742 at 755 (explaining that, the warden, as a layperson, could rely on the medical staff's expertise as long as he did not ignore Plaintiff or his mistreatment); *Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010); *Hayes v. Snyder*, 546 F.3d 516, 527-28 (7th Cir. 2008); *Johnson v. Doughty*, 433 F.3d 1001, 1010-11 (7th Cir. 2006); *Greeno v. Daley*, 414 F.3d 645, 655-56 (7th Cir. 2005). Thus, Defendants Hutchinson and Pfister are entitled to summary judgment. *Arnett*, 658 F.3d at 757.

### A. Defendant Hutchinson

Plaintiff does not dispute that Hutchinson's response to his complaints and grievances was reasonable under the circumstances. Instead, Plaintiff argues that a reasonable jury could find Defendant Hutchinson liable for deliberate indifference because he knew Plaintiff was not receiving a renal diet at Menard, but did nothing to help secure the diet. Dkt. 144 at 16. According to Plaintiff, Hutchinson knew about his condition, and need for treatment and a medical diet because he spoke to him and wrote a letter that he claims Hutchinson received. *Id.* at 16-17. Plaintiff also cites to the December 7, 2016 grievance that Hutchinson deemed an emergency and expedited to the medical director (*Id.* at 17-18); and a December 8, 2016 email that was sent to Hutchinson about inmates that were transferred from Menard and previously had medical holds. *Id.* at 18.

Based on this evidence and Plaintiff's purported complaints, he asks this Court to infer that Hutchinson knew he was not receiving adequate care. In support, Plaintiff relies on *Riley-El v. Godinez*, where the court found the plaintiff's claims against the

3

wardens were sufficient to survive a motion to dismiss. *Id*. at 18 (citing *Riley-El v. Godinez*, No. 13 C 8656, 2015 WL 4572322, at *6 (N.D. Ill. July 27, 2015)). In *Riley-El*, the court found that it was reasonable to infer the defendants were aware of the plaintiff's grievances based on their positions as warden; and the allegations that they were responsible for resolving grievances and had knowledge of his complaints, but failed to act. *Riley-El*, No. 13 C 8656, 2015 WL 4572322, at *6. However, that court also recognized that "a more fully developed record may demonstrate that these defendants were not, in fact, involved in resolving [plaintiff's] grievances and could not have known about them." *Id*. Here, we have a fully developed record that demonstrates Hutchinson was not involved in Plaintiff's medical care, and did not have reason to believe, or actual knowledge, that the prison doctors were mistreating (or not treating) him. Thus, the Court should decline to infer liability because none of the evidence suggests that the information conveyed to Hutchinson put him on notice that the care Plaintiff was receiving was inadequate.

Even if Plaintiff's alleged conversations with Hutchinson did occur, there is no evidence that the communications alerted him to an obvious risk to Plaintiff's health. Moreover, it is undisputed that Plaintiff was already under the care of medical staff at Menard, including the Medical Director, each time he spoke to Hutchinson; and Plaintiff himself claims that Hutchinson told him that he would look into the matter and contact the Medical Director. (Pl.'s Resp. to DSOF, Dkt. 145, at ¶¶ 52-59). The parties do not dispute that Hutchinson personally reviewed and responded to Plaintiff's grievance on December 7, 2016, and found it constituted an emergency. (Pl.'s Resp. to DSOF at ¶¶

4

63-64; Defs' Resp. to PSOAF at ¶ 50). It is also undisputed that, at the time Hutchinson received the grievance, Plaintiff was already under the care of medical staff, including the Medical Director, who he saw on December 1, 2016. (Defs' Resp. to PSOAF at ¶ 54; Pl.'s Resp. to DSOF at ¶¶ 52, 57-59). In addition, Plaintiff does not dispute that he saw Dr. Kamran, a local nephrologist on December 8, 2016 – the day after Hutchinson deemed his grievance an emergency. (Pl.'s Resp. to DSOF at ¶ 61). Furthermore, it is undisputed that Hutchinson followed his practice of referring emergency grievances on medical issues to the medical staff, and that he expedited Plaintiff's grievance so that it would be sent directly to the medical department. (Pl.'s Resp. to DSOF ¶¶ 62-64). All of the evidence suggest that Hutchinson took the appropriate action and reasonably relied on the medical staff's judgment.

Lastly, the evidence does not support a finding that Hutchinson was deliberately indifferent for not providing Plaintiff with a renal diet at Menard. The undisputed evidence shows that Dr. Trost was responsible for filling out the special diet forms at Menard, not Hutchinson. (Pl.'s Resp. to DSOF at ¶ 59). Additionally, by the time Plaintiff claims to have raised this complaint with Hutchinson, the issue was already being addressed by Dr. Trost, who told him they did not have renal diets. (Pl.'s Resp. to DSOF at ¶¶ 52-55, 57-60). As a non-medical official, Hutchinson was not qualified to interfere with the treatment plan of Plaintiff's doctors and Dr. Trost. As such, there is nothing more Hutchinson could have done in addition to referring the matter back to Dr. Trost, which is what he did. (Pl.'s Resp. to DSOF at ¶¶ 55 and 64). Moreover, there is no evidence that Hutchinson personally denied Plaintiff a medically prescribed diet,

5

or that he knew the lack of a specific diet would expose Plaintiff to a significant risk. In fact, there is no evidence that Plaintiff *required* a renal diet when he was at Menard. Rather, the evidence shows that Dr. Ricardo *recommended* that he continue a low sodium, low phosphorus, and low potassium diet. (Defs' Resp. to PSOAF at ¶ 2; Pl.'s Ex. 4).

In sum, none of the evidence suggests that Hutchinson knew Plaintiff's care was insufficient, or that he ignored Plaintiff's complaints. Furthermore, there is no genuine issue of material fact as to whether Hutchinson responded reasonably to Plaintiff's complaints and grievances. *Peate*, 294 F.3d at 882 (citing *Farmer*, 511 U.S. at 844-45). As such, Defendant Hutchinson is entitled to summary judgment.

### B.    Defendant Pfister

Plaintiff claims that Defendant Pfister was deliberately indifferent because he "did nothing to secure medically necessary, physician recommended treatment" and "caused" Plaintiff's transfer from Stateville to Menard in November 2016. Dkt. 144 at 9. According to Plaintiff, Pfister knew he was not receiving follow-up treatment at UIC after his July 29, 2016 appointment because he spoke to Pfister on 3-4 occasions. *Id*. Yet, Plaintiff also admits that Pfister told him he would follow up with medical about his treatment each time they spoke. *Id*. at 10. Plaintiff further argues that Pfister did not take any meaningful steps to address the missed appointments. *Id*. In support, Plaintiff points to the fact that he did not return to UIC between July 2016 and November 2016, and asks the Court to infer that Pfister did nothing because there is no evidence that he contacted medical personnel to inquire about these appointments. *Id*. Plaintiff cannot

6

rely on such unsupported allegations to defeat Defendants' Motion, but rather "must present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Henning v. O'Leary*, 477 F.3d 492, 496 (7th Cir. 2007) (*quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) (providing that an inference without any accompanying evidence is insufficient to survive a motion for summary judgment).

Here, Plaintiff is attempting to hold Pfister liable because he did not intervene in his treatment. But, the record is clear that Pfister is not a medical professional and was not in a position to question Plaintiff's course of treatment. (DSOF at ¶¶ 18-19). Although Plaintiff believes his care was inadequate, there is no evidence that Pfister had a reason to believe, or actual knowledge, that the medical staff was mistreating or not treating him. (DSOF at ¶¶ 20, 25-26, 32). Plaintiff also argues that Pfister should have asked medical personal whether his follow-up appointments with UIC nephrology should have been delayed. Dkt. 144 at 11. Given that Pfister did not know about Plaintiff's condition or required treatment, and had no reason to believe that medical staff was putting him at risk (DSOF at ¶¶ 20-22, 25-26, 32), any failure to specifically inquire about Plaintiff's UIC appointments (that were being handled by the medical staff) is not sufficient to sustain a deliberate indifference claim. *Arnett*, 658 F.3d at 755; *see also Duncan v. Duckworth*, 644 F. 2d 653, 656 (7th Cir. 1981) (dismissing deliberate indifference claim against the warden because, by virtue of his position, it is doubtful he "would be directly involved in the day-to-day operation of the prison hospital such that

7

he would have personally participated in, or have knowledge of, the kinds of decisions that led to the delay in treatment.").

In addition, Plaintiff improperly attempts to hold Pfister liable for the actions of his subordinates, including the grievance officers who responded to Plaintiff's medical grievances. Dkt. 144 at 10. This is not a sufficient basis for liability on Plaintiff's Section 1983 claim. *See Johnson*, 444 F.3d at 583 (7th Cir. 2006) (providing that "a plaintiff must establish that a defendant was personally responsible for the deprivation of a constitutional right."); *see also Arnett*, 658 F.3d at 757 (7th Cir. 2011) (explaining that a plaintiff's allegations against a prison official can only satisfy "the personal responsibility requirement of section 1983 if the conduct causing the constitutional deprivation occurs at [the official's] direction or with his knowledge and consent."); *George v. Smith*, 507 F. 3d 605, 609-10 (7th Cir. 2007) (holding that "[r]uling against a prisoner on an administrative complaint does not cause or contribute to the violation.").

Finally, Plaintiff argues that Pfister was deliberately indifferent to his transfer to Menard because he "knew" UIC physicians were treating him for Stage V PKD, and a transfer to Menard would interfere with that treatment. Dkt. 144 at 11. In support, Plaintiff cites to a conversation he allegedly had with Pfister a few days before the transfer. *Id*. However, none of the evidence supports a finding that Pfister's involvement in the transfer constitutes deliberate indifference. The evidence shows that Pfister did not know Plaintiff was on the transfer list, or that his transfer would interfere with his treatment. (Defs' Resp. to Pl. SOAF at ¶¶ 34 and 36; DSOF at ¶¶ 25-26). The transfer was facilitated by the IDOC and able to move forward because Plaintiff did not

8

have a medical hold in place, and because the non-medical personnel had no reason to believe Plaintiff could not transfer. (DSOF at ¶¶ 34, 43-49; Defs' Resp. to Pl. SOAF at ¶¶ 30-32, 37-38). The undisputed evidence shows that the medical director is responsible for placing and lifting medical holds; and that Dr. Obaisi removed Plaintiff's medical hold. (Defs' Resp. to Pl. SOAF at ¶¶ 25, 30-32, 37-38). In light of Dr. Obaisi's decision to remove the medical hold, the transfer was approved. (*Id*. at ¶¶ 37-38). Moreover, Pfister had no reason to question Dr. Obaisi's decision to remove the medical hold, or question whether Plaintiff could transfer to Menard. (DSOF at ¶¶ 25-26). Furthermore, there is no evidence that Pfister knew Plaintiff could not receive the medical treatment he needed at Menard.

Thus, even if Pfister was involved in the administrative aspects of the transfer process, he cannot be held liable for failing to substitute his judgment for that of Dr. Obaisi with respect to the medical hold. *See Berry*, 604 F.3d at 440 ("As a nonmedical administrator, [defendant] was entitled to defer to the judgment of jail health professionals so long as he did not ignore [the inmate]"); *See also Spruill v. Gillis,* 372 F. 3d 218, 236 (3d Cir. 2004) (providing that, "if a prisoner is under the care of medical experts ... a non-medical prison official will generally be justified in believing that the prisoner is in capable hands…[h]olding a non-medical prison official liable in a case where a prisoner was under a physician's care would strain this division of labor."). Accordingly, Defendant Pfister is entitled to summary judgment.

WHEREFORE Defendants Jeffrey Hutchinson and Randy Pfister respectfully request that this Court grant their Motion for Summary Judgment, dismiss the claims

against them in Plaintiff's Amended Complaint, and grant any further relief the Court deems reasonable and just.

Dated: October 25, 2019

                                            Respectfully submitted,

KWAME RAOUL
Attorney General of Illinois                 /s *Colleen M. Shannon*
                                                  COLLEEN M. SHANNON
                                                  Assistant Attorney General
                                                  General Law Bureau
                                                  100 W. Randolph St., 13th Fl.
                                                  Chicago, Illinois 60601
                                                  (312) 814-4451
                                                  cshannon@atg.state.il.us

## CERTIFICATE OF SERVICE

The undersigned certifies that on October 25, 2019, the foregoing document was electronically filed using the Court's CM/ECF system, and a copy was thereby served on all attorneys of record.

                                                            /s *Colleen M. Shannon*