19344/42184/MHW/REN

# UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| BOB A. BRINSON (A-82598), | |
| Plaintiff, | Case Number 17-cv-1659 |
| v. | Hon. John Z. Lee, District Judge |
| JACQUELINE LASHBROOK, et al., | |
| Defendants. | |

## DEFENDANTS, WEXFORD HEALTH SOURCES, INC., GHALIAH OBAISI, AS INDEPENDENT EXECUTOR OF THE ESTATE OF SALEH OBAISI, M.D., DECEASED, AND JOHN TROST, M.D.'S
## REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Defendants, WEXFORD HEALTH SOURCES, INC., GHALIAH OBAISI, as Independent Executor of the Estate of SALEH OBAISI, M.D., Deceased, and JOHN TROST, M.D., by and through their attorneys of CASSIDAY SCHADE LLP, and for their Reply in Support of their Motion for Summary Judgment, hereby state as follows:

### I.  INTRODUCTION & BACKGROUND

Contrary to the Plaintiff's varied claims, this case is replete with instances of the Plaintiff's medical providers, including Dr. Obaisi and Dr. Trost, coordinating and obtaining medical care for the Plaintiff. Whether considering the Plaintiff's claim for deliberate indifference or his claim that Wexford breached its prior settlement agreement with him, the Plaintiff's Response (Doc. #144), fails to provide any basis upon which he should be permitted to proceed to trial against any of the Wexford Defendants. The medical care and treatment provided to the Plaintiff in order to address his long-standing medical condition supports the only appropriate finding in this case: that no reasonable jury could find for the Plaintiff on any of his

claims against these moving Defendants. As such, summary judgment should be granted at this stage.

## II. REPLY ARGUMENT IN SUPPORT OF SUMMARY JUDGMENT

**A.** *Dr. Obaisi was not Deliberately Indifferent and His Estate should be Dismissed from this Case*

In his Response, the Plaintiff claims that Dr. Obaisi was deliberately indifferent by causing a delay in scheduling the Plaintiff's follow-up nephrology appointment at UIC. (Doc. #144, p. 18). Though it is undisputed that the Plaintiff did not return to UIC within the six-week (or four-week) recommended period in Dr. Ricardo's note, the undisputed record does not support any triable claim that Dr. Obaisi caused a delay in the follow-up appointment or otherwise acted with a culpable or reckless state of mind, which delayed scheduling of the follow-up appointment.

The Plaintiff's Response ignores critical undisputed facts, which make clear that no reasonable jury could find that Dr. Obaisi caused a delay in the Plaintiff's follow-up appointment at UIC. The Plaintiff cannot proceed to trial against Dr. Obaisi on the claimed basis that the doctor was responsible for all aspects of inmates' medical care and each step in the process of transporting a maximum security, segregation-status, inmate to a public hospital. The Plaintiff claims that deliberate indifference arose when Dr. Obaisi approved the Plaintiff's December 2016 appointment date at UIC. (Doc. #144, p. 19). This fact, however, does not support deliberate indifference. First, it shows that the doctor was involved in, rather than ignoring, the process to have Plaintiff sent to UIC. (**"SOF,"** para. 5). Secondarily, the Plaintiff has offered no response to the critical and undisputed facts that the December appointment date was provided by UIC, and even though a UIC provider may recommend a timeframe for an appointment, the

actual date for the appointment is based on the availability of appointments from the UIC provider. (**SOF** paras. 7 and 5).

The Plaintiff's medical records in this case show that Dr. Obaisi continually obtained approval for the Plaintiff's ongoing follow-up appointments at UIC and that the doctor monitored and recorded the Plaintiff's return to Stateville following those appointments. (**"SOF,"** para. 68). This pattern of treatment is in no way so outweighed by the Plaintiff's claim that at one point in time he went only a few months without a follow-up (during which time he developed no complications and during which Dr. Obaisi and Wexford continued to monitor him), so as to constitute deliberate indifference.

Summary judgment is "the 'put up or shut up' moment in litigation," where "the non-moving party is required to marshal and present the court with the evidence she contends will prove her case." *Goodman v. Natl. Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010) (*quoting Everroad v. Scott Truck Sys., Inc.*, 604 F.3d 471, 476 (7th Cir. 2010)). This is not the point in this case to throw theories of liability at the wall to see what sticks, as the Plaintiff is attempting to do here. In his Response, the Plaintiff expends a substantial portion of his brief contending that co-Defendant, Pfister, caused and was responsible for the Plaintiff's transfer from Stateville to Menard. (Doc. #144, pp. 14 – 17). The Plaintiff then contends that *Dr. Obaisi* caused and was responsible for the Plaintiff's transfer. The Plaintiff cannot have it both ways and the record does not support the Plaintiff's efforts in this claim against Dr. Obaisi.

The Plaintiff's claim that Dr. Obaisi improperly approved his transfer to Menard should be dismissed because the undisputed record makes clear that the transfer was in all aspects controlled by the IDOC. (**"SOF,"** paras. 9, 12, 53, and 55). The undisputed testimony in this case makes clear that the Plaintiff's transfer to Menard was a process entirely implemented and

controlled by the IDOC, which the Plaintiff's Response as to co-Defendant, Pfister wholly corroborates. (**"SOF,"** paras. 9, 12, 53, and 55). Dr. Obaisi had no say in this process or any control over the movement of inmates.

The Plaintiff's Response also offers no authority to refute the Defendant's well-supported argument that removal of a medical hold cannot support a triable claim for deliberate indifference. As stated in Defendants' Memorandum of Law, "[a] treatment-related or administrative decision such as placing a 'medical hold' on a prisoner is not an appropriate matter for court intervention." *Williams v. Caldwell*, No. 14-cv-1416-JPG, 2015 U.S. Dist. LEXIS 7785, at *10-11 (S.D. Ill. Jan. 23, 2015). A plaintiff's disagreement with a defendant's decision to maintain a medical hold does not support a constitutional claim for deliberate indifference. *See Ciarpaglini v. Saini*, 352 F.3d 328, 331 (7th Cir. 2003); *Garvin v. Armstrong*, 236 F.3d 896, 898 (7th Cir. 2001) (courts will not takes sides in disagreements about medical personnel's judgments or techniques).

Finally in his Response as to Dr. Obaisi, the Plaintiff presents a seemingly new theory of liability when he claims that the doctor was deliberately indifferent by causing a delay in removing the Plaintiff's chest catheter, which was in place to permit the Plaintiff to receive dialysis treatment. (Doc. #144, p. 20). The Plaintiff claims that because he faced a risk of infection from the catheter placement, and Dr. Obaisi did not arrange for replacement of the Plaintiff's dialysis access point, Dr. Obaisi was deliberately indifferent. (Doc. #144, p. 20 - 21).

In this regard, the Plaintiff's claim sounds more in medical malpractice than deliberate indifference, however, there is no evidence to support a claim under either theory of liability. Rather, the independent medical testimony from Dr. Hale provides that, although a catheter is not the preferred access point for dialysis treatment, it was a medically indicated method for the

4

Plaintiff, and patients can go months or even years with a catheter access point. (**SOF**, para. 34). This testimony alone, should remove this claim from consideration by a jury. If an independent physician testified that a catheter can be utilized for an even longer period of time than it was for the Plaintiff, the law cannot support a finding of deliberate indifference. Moreover, neither of the potential complications of a catheter access point (infection or clotting) arose in the Plaintiff's case. To the extent that the Plaintiff claims that deliberate indifference arose due to a *risk* of such complications, the evidence makes clear that the risk arose simply by virtue of the Plaintiff's kidney condition and the necessitated treatment of his chronic illness, not from any action or inaction by Dr. Obaisi. For all of these reasons, each of the Plaintiff's claims against the Estate of Dr. Obaisi should be dismissed.

**B.**     *Dr. Trost was not Deliberately Indifferent and should be Dismissed from this Case*

Responding to Dr. Trost's request for dismissal, the Plaintiff first contends that Dr. Trost was deliberately indifferent because he failed to provide the Plaintiff with a renal diet at Menard. (Doc. #144, p. 25). This claim, however, is entirely and undoubtedly refuted by the undisputed record, which shows Dr. Trost had no ability to provide the Plaintiff with a renal diet at Menard. (See **"SOF"** paras. 48 and 66). The Plaintiff also offers no legal authority to support a claim for deliberate indifference against a physician for failing to provide a certain diet to an inmate when the physician had no control over the dietary program available at a prison. Dr. Trost cannot be liable for that which he does not control and in which he is not personally involved. Accordingly, the Plaintiff cannot proceed against the doctor for any claim that Dr. Trost was at fault for the Plaintiff not receiving a renal diet while at Menard.

Further in his Response against Dr. Trost, the Plaintiff claims that the doctor was deliberately indifferent by delaying the Plaintiff's referral to a vascular surgeon. (Doc. #144, p.

26 – 27). This claim is nothing more than a futile attempt by the Plaintiff to take this case to a jury and there is no legal or factual basis to support this claim against Dr. Trost. Essentially, the Plaintiff claims that Dr. Trost acted so egregiously so as to be deliberately indifferent because the doctor prevented the Plaintiff from having surgery to insert an AV graft in January of 2017, prior to the Plaintiff's return to Stateville. While the Plaintiff, in the first instance, claimed that he should not have been transferred from Stateville, and should have been continued with his treatment at UIC, he now tries to claim deliberate indifference when Dr. Trost determined that the Plaintiff could continue without a further surgery while at Menard. This baseless claim should be dismissed.

The Plaintiff claims that Dr. Trost's decision was not based on medical judgment, so as to amount to deliberate indifference, however, no evidence whatsoever is offered in support of this assertion. (Doc. #144, p. 27). Indeed, as noted above, there is no evidence to support a claim for deliberate indifference relative to the time period during which the Plaintiff had a catheter access point because patients can go months or even years with a catheter (**SOF**, para. 34), and neither of the potential complications of a catheter access point (infection or clotting) arose in the Plaintiff's case. For these reasons, each of the Plaintiff's claims against the Dr. Trost should be dismissed.

C.  *Wexford did Not Breach its Settlement Agreement and should be Dismissed from this Case*

The Plaintiff's Response asserts that summary judgment should be denied because Wexford only argued that one of the four elements of a claim for breach of contract was not met in this case. (Doc. #144, p. 28). All that is necessary for summary dismissal, however, is for there to be no genuine question of material fact that Wexford did not breach the settlement agreement. This is exactly the finding that the undisputed record supports.

The Plaintiff responds to Wexford's Motion by first stating that Wexford breached the agreement by failing to follow UIC recommendations when the Plaintiff did not return for a follow-up after his July 29, 2016, appointment at UIC. (Doc. #144, p. 29). There is no evidence from which a reasonable jury could find that Wexford failed to follow the UIC provider's recommendations in this regard. (**"SOF"** para. 65). As discussed above, although Dr. Ricardo's note contained a recommendation for a six (or four) week follow-up, the undisputed record in this case makes clear that even though a UIC provider may recommend a timeframe for an appointment, the actual date for the appointment is based on the availability of appointments from the UIC provider; appointment dates at UIC are provided by UIC and not dictated by Wexford. (**SOF** paras. 7 and 5). This fact is particularly the type of consideration set forth in the settlement agreement, which provides that the UIC recommendations to be followed by Wexford must take into account the security environment in which Plaintiff resides.

Further, similarly as he claims against Dr. Obaisi and Dr. Trost, the Plaintiff asserts that the alleged failure to arrange for an AV graft constituted a breach of the settlement agreement. Never mind that the Plaintiff has presented no evidence, whatsoever, to support a finding that the use of a catheter was not medically indicated or that the failure to insert an AV graft was such a substantial departure from accepted medical treatment so as to constitute deliberate indifference, the Plaintiff contends that a reasonable jury could find that Wexford breached the settlement agreement because it failed to follow the recommendations of Dr. Hale for a follow-up at UIC. (Doc. #144, p. 31).

Dr. Hale testified that the recommended time frame for a follow-up with the vascular surgeon was merely a standard follow-up time and that there was no emergent rush for the Plaintiff to be seen after Dr. Hale had placed the dialysis access. Additionally, Dr. Hale testified

7

that the two to four week note for follow-up was a nonemergency time period. (Defendants' Ex. "D," 37:11-24). Dr. Hale also testified that some patients can keep a tunneled catheter in for three to five years. (**SOF**, para. 34).

Finally, the Plaintiff's Response fails to assert any triable issue as to a breach of the settlement agreement based upon the alleged failure to make sure a renal diet was in place for the Plaintiff while he was at Menard. (Doc. #144, pp. 31 – 32). The undisputed record in this case *and* the settlement agreement make evident, and specifically acknowledge, that the Plaintiff's diet is controlled by the IDOC in accordance with the IDOC dietary guidelines and directives over which Wexford has no direct control. (**"SOF,"** para. 2). The Plaintiff's claim in this regard is illogical. Wexford had no ability to provide for a renal diet for the Plaintiff at Menard, which is an IDOC maximum security facility and in which the diet program is wholly controlled by the IDOC. This claim too, should be dismissed.

For all of the foregoing reasons, and as further stated in Defendants' Memorandum of Law, there are no genuine questions of material fact as to any of the Plaintiff's claims against the Estate of Dr. Obaisi, Dr. Trost, or Wexford, and as such, this Honorable Court should grant summary judgment and dismiss each of the Defendants with prejudice.

WHEREFORE, Defendants, WEXFORD HEALTH SOURCES, INC., GHALIAH OBAISI, as Independent Executor of the Estate of SALEH OBAISI, M.D., Deceased, and JOHN TROST, M.D., pray that this Honorable Court grant Defendants' Motion for Summary Judgment, dismiss this case with prejudice, and award costs in favor of the Defendants.

Respectfully submitted,

CASSIDAY SCHADE LLP

By: /s/ Ronald E. Neroda
    One of the Attorneys for Defendants,
    WEXFORD HEALTH SOURCES, INC.,
    GHALIAH OBAISI, as Independent Executor
    of the Estate of SALEH OBAISI, M.D.,
    Deceased, and JOHN TROST, M.D.

Matthew H. Weller | 6278685
Ronald E. Neroda | 6297286
CASSIDAY SCHADE LLP
222 West Adams Street, Suite 2900
Chicago, IL 60607
(312) 641-3100
(312) 444-1669 (Fax)
mweller@cassiday.com
rneroda@cassiday.com

**CERTIFICATE OF SERVICE**

I hereby certify that on October 25, 2019, I electronically filed the foregoing Reply with the clerk of the court for the Northern District of Illinois using the electronic case filing system of the court. The electronic case filing system sent a "Notice of E-Filing" to the attorneys of record in this case.

/s/ Ronald E. Neroda

9307909